UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   -v-                                          CASE NO: 5:23-CR-0482
                                                       **DEFENSE SENTENCING MEMORANDUM**

ANTHONY BEVERLY,

                  Defendant.

---

## I.   PRELIMINARY STATEMENT

On June 17, 2024, Anthony Beverly ("Mr. Beverly") pled guilty to a superseding information charging him with possession with intent to distribute controlled substances (21 U.S.C. § 841(a)(1) and (b)(1)(C)) and possession of firearms and ammunition by a prohibited person (18 U.S.C. § 922(g)(1)). (Dkt. No. 49.) There is a written plea agreement in the case. (Dkt. No. 51.) Sentencing is scheduled for October 15, 2024. (Dkt. No. 52.)

The United States Probation Department prepared a Presentence Investigation Report (*hereinafter* "PSR") on September 20, 2024, in anticipation of sentencing. (Dkt. No. 56.) The PSR sets forth a total offense level of 25, a Criminal History Category of IV, and a Guideline sentencing range of 84-105 months. *Id*. ¶¶ 33, 43, 74. There is no mandatory minimum sentence in this case. *Id*. ¶ 73.

The defense respectfully submits this memorandum in support of a below-Guideline sentence. A below-Guideline sentence is appropriate because, among other reasons, Mr. Beverly's near death at the hands of his friend and roommate has already served as a substantial punishment for his conduct.

1

## II. FACTUAL AND PROCEDURAL HISTORY

Mr. Beverly was born in Newark in 1989 and grew up in Brooklyn. (Dkt. No. 56 ¶ 55.) Mr. Beverly's mother was a teenager when she had Mr. Beverly. *Id*. Mr. Beverly's father was murdered at the age of 23, when Mr. Beverly was a very small child. *Id*. After the murder, Mr. Beverly's mother began a long-term relationship with a man named Franz Michel. *Id*. ¶ 56. Mr. Michel was Mr. Beverly's primary father figure. *Id*. However, he was sent to prison when Mr. Beverly was only thirteen years old and remained there for fourteen years. *Id*. After Mr. Michel went to prison, Mr. Beverly's relationship with his mother began to deteriorate. *Id*. Mr. Beverly frequently ran away from home. *Id*. He began drinking alcohol and smoking marijuana. *Id*. ¶ 65. He dropped out of high school when he was in tenth grade. *Id*. ¶ 66.

Mr. Beverly married Nathalie Villanueva when he was nineteen years old. (Dkt. No. 56 ¶ 59.) They have a daughter, who is now fifteen years old, and a son, who is now twelve years old. *Id*. In addition to their two children together, Mr. Beverly also helped raise Ms. Villanueva's daughter from a previous relationship, who is now eighteen years old. *Id*. Mr. Beverly and Ms. Villanueva separated in 2015 but remain legally married and are on good terms. *Id*. Mr. Beverly is close to all three children. *Id*. All three lived with him in 2022 as Ms. Villanueva struggled with drug and alcohol abuse. *Id*.

Like many people who grew up in similar circumstances, Mr. Beverly has a criminal history. (Dkt. No. 56 ¶¶ 36-51.) The vast majority of his convictions involve theft or fraud. *Id*. The only item on his rap sheet that involves any violence or physical force is a youthful offender adjudication for third degree assault when he was sixteen years old. *Id*. ¶ 36. Only one of his convictions was for a felony. *Id*. ¶¶ 36-51. That felony was non-violent—in 2015, he was convicted of possession of a forged instrument in the first degree. *Id*. ¶ 40.

In September 2023, Mr. Beverly moved to Syracuse. (Dkt. No. 56 ¶ 57.) He rented an apartment on West Colvin Street. *Id*. ¶ 58. After he had been there a few weeks, a friend named Robert Fecu[1] asked if he could stay with Mr. Beverly because his wife had kicked him out. *Id*. ¶ 14. When Fecu arrived to move in, he had firearms and cocaine with him. *Id*. It was clear to Mr. Beverly that Fecu was struggling with his mental health. Against his better judgment, Mr. Beverly allowed him to stay and offered to store the firearms and cocaine in the safe in his own room. *Id*. Fecu was involved in drug trafficking and Mr. Beverly participated in the trade while Fecu lived with him. *Id*. ¶ 19. According to Mr. Beverly, Fecu was in a paranoid state during his time at the apartment and kept talking about being prepared for armed resistance to the government.

On October 26, 2023, Mr. Beverly was standing in a bedroom in the apartment when he heard Fecu enter the room. He turned, expecting Fecu to say something to him. Instead, Fecu attacked him with a knife. (Dkt. No. 56 at 6 n.3.) The two struggled for a long time. The fight moved from the bedroom, through the apartment, down a common stairway, and out onto the porch. Fecu stabbed Mr. Beverly over and over during the fight, using multiple knives. *Id*. He stabbed Mr. Beverly in the back (severely wounding his kidneys), the chest (severely wounding his lungs), the head, the arms, and the hands. *Id*. ¶ 62. Mr. Beverly believed that Fecu was going to sexually assault him in addition to stabbing him. *Id*. at 6 n.3. Mr. Beverly eventually wrestled one of the knives from Fecu and struck back in self-defense. *Id*. Fecu fell onto the porch. Mr. Beverly dragged himself out of the house and across the yard to the neighboring yard, where he was able to get the attention of three girls. (Dkt. No. 26-2 at ECF 14.) He told them that he had been stabbed and asked for help. *Id*.

---

[1] Like Mr. Beverly, Fecu grew up in New York City. Blaire Briody, *A Hard Road Behind, a New Road Ahead*, N.Y. Times, Jan. 25, 2009, https://www.nytimes.com/2009/01/25/nyregion/thecity/25job.html

The Syracuse Police Department ("SPD") responded to the scene. (Dkt. No. 26-2 at ECF 5.) Fecu was pronounced dead on the scene. *Id*. Mr. Beverly was transported to Upstate University Hospital in critical condition. *Id*. Hospital personnel told SPD officers that Mr. Beverly had a "two percent chance to live." *Id*. at ECF 25. Mr. Beverly was in a coma for approximately eight days. (Dkt. No. 56 ¶ 62.) He underwent surgery to repair damage to his left lung. *Id*. The post-operation process was complicated by persistent bleeding and required additional surgeries. *Id*. Mr. Beverly also required surgery to his left hand. *Id*.

As Mr. Beverly struggled for his life, the SPD obtained a warrant and searched the apartment. (Dkt. No. 56 ¶ 9.) They found multiple firearms, ammunition, and drugs. *Id*. ¶¶ 9-13. Mr. Beverly was interviewed in the hospital on the same day he underwent surgery on his left hand. *Id*. ¶¶ 14, 62. He admitted storing Fecu's firearms and cocaine in the safe in his own bedroom. *Id*. ¶ 14. On November 8, 2023—the day Mr. Beverely was discharged from the hospital—he was charged by complaint with possession of firearm and ammunition by a prohibited person (18 U.S.C. § 922(g)(1)). (Dkt. No. 1.) He made his initial appearance in federal court on November 16, 2023. (Minute Entry Nov. 16, 2023.) On November 29, 2023, Mr. Beverly was indicted for possession of firearm and ammunition by a prohibited person (18 U.S.C. § 922(g)(1)). (Dkt. No. 14.) A state charge for criminal possession of a weapon in the second degree was dismissed in lieu of federal prosecution. (Dkt. No. 56 ¶ 49.) Mr. Beverly was not charged in Fecu's death. *Id*. at 6 n.3.

Since his incarceration, Mr. Beverly has received limited medical services. He did not receive physical therapy following the surgery on his left hand. As a result, he is unable to move the fingers on his left hand and the hand is nearly useless. Mr. Beverly requested a detention hearing after he had been incarcerated for several months, hoping to be released so that he could seek better medical care. (Dkt. No. 37.) He remained detained. (Dkt. No. 43.) Eventually, a

second surgery on Mr. Beverly's hand was scheduled but was then delayed/canceled when Mr. Beverly was moved from the Justice Center to Delaware County Jail. Mr. Beverly has been advised that amputation of his fingers may be necessary if he does not receive the second surgery and follow-up physical therapy.

On June 17, 2024, Mr. Beverly pled guilty to a superseding information charging him with possession with intent to distribute controlled substances (21 U.S.C. § 841(a)(1) and (b)(1)(C)) and possession of a firearm and ammunition by a prohibited person (18 U.S.C. § 922(g)(1)). (Dkt. No. 49.) He admitted possessing firearms and ammunition and possessing with intent to distribute methamphetamine, fentanyl, and cocaine. (Dkt. No. 56 ¶¶ 1-2.) The case is ready to proceed to sentencing.

### III. THE FACTORS LISTED IN 18 U.S.C. § 3553(a) WEIGH IN FAVOR OF A BELOW-GUIDELINE SENTENCE.

In determining a sentence, a court must consider the statutory concerns listed in 18 U.S.C. § 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §3553(a). Here, these factors weigh in favor of imposing a below-Guideline sentence.

> **A.  The Nature and Circumstances of the Offense Weigh in Favor of a Below-Guideline Sentence.**

The nature and circumstances of the offense weigh in favor of a below-Guideline sentence. Although Mr. Beverly has admitted that he had firearms and drugs in his apartment (Dkt. No. 56 ¶¶ 14, 19), there does not appear to be any information indicating threatened or actual firearm violence. The defense has not received any reports indicating that Fecu or Mr. Beverly brandished, fired, or threatened people with the firearms. The only violence that occurred was Fecu's attack on Mr. Beverly. Although Fecu's attack on Mr. Beverly was violent, neither man escalated matters by using a firearm.

In contrast to this situation, the circumstances leading to a felon-in-possession charge often involve firearm violence. *See, e.g*, *United States v. Lee*, 549 F.3d 84 (2d Cir. 2008) (defendant found guilty of being a felon in possession of a firearm as part of investigation into his role in a conspiracy to commit murder-for-hire); *United States v. Payton*, 159 F.3d 49 (2d Cir. 1998) (defendant, knowing that friends intended to use weapon to commit a robbery, charged friends $700 plus a portion of the robbery proceeds to loan them firearm, resulting in death to robbery victim); *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994) (firearm used in bank robbery). Here, no such circumstances were present. Accordingly, this factor weighs in favor of a below-Guideline sentence.

> **B.  Mr. Beverly's History and Characteristics Weigh in Favor of a Below-Guideline Sentence.**

Mr. Beverly's history and characteristics weigh in favor of a below-Guideline sentence for three reasons. First, Mr. Beverly nearly died as the result of his poor decision to allow Fecu into his home and participate in the drug trade with him. Fecu attacked him brutally, attempting to kill him. Doctors gave him a two percent chance to live. He was in a coma for eight days. He underwent multiple surgeries. He still has not fully recovered. This has served as significant

punishment for his actions. Further, the fact that he was almost murdered by someone he considered a friend has led Mr. Beverly to reassess his choices. He knows that he must cut negative influences out of his life, even if they are people he has known a long time. As he said during his PSR interview, "[t]here is no reason to be involved with this lifestyle anymore." (Dkt. No. 56 ¶ 19.)

Second, unlike other people found guilty of being felons in possession, Mr. Beverly has no history of firearm violence. (Dkt. No. 56 ¶¶ 36-50.) His prior felony was for the non-violent offense of possession of a forged instrument. *Id*. ¶ 40.

Third, as expressed in the letters of support filed separately on his behalf, Mr. Beverly is a kind-hearted man with many friends. More importantly, he is a devoted father. Although he and his wife do not have a formal custody agreement, he frequently cares for the children when his wife struggles financially or relapses into addiction. Mr. Beverly's children have been living in a shelter in Brooklyn because he has not been able to provide for them since being incarcerated. (Dkt. No. 56 ¶ 59.) Courts may appropriately consider the effects that incarceration of the defendant would have on innocent family members. *See, e.g.*, *United States v. Antonakopoulos*, 399 F.3d 68 (1st Cir. 2005) (district court may consider defendant's role as caretaker for brain-damaged son even though alternative means of care existed); *United States v. Dominguez*, 296 F.3d 192 (3d Cir. 2002) (district court erred in concluding it could not depart four levels in bank fraud case for defendant who resided with elderly parents, who were physically and financially dependent on her); *United States v. Lehmann*, 513 F.3d 805 (8th Cir. Jan. 17, 2008) (sentence of probation affirmed where justified by the atypical nature and circumstances of the felon in possession case and by the defendant's need to care for her nine-year-old developmentally disabled son). Accordingly, Mr. Beverly's history and characteristics weigh in favor of a below-Guideline sentence.

    **C.    The Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence to Criminal Conduct Weigh in Favor of a Below-Guideline Sentence.**

Another factor the Court must consider is the need for the sentence imposed to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct. A below-Guideline would meet these needs. In particular, a below-Guideline sentence would deter criminal conduct. Studies of the deterrent effect of prison sentences have found that it is the prosecution of crime, rather than the sentence imposed, that has the strongest deterrent effect. In one of the best studies of specific deterrence, no difference in deterrence was found between probation and imprisonment. Another study by the Institute of Criminology at Cambridge University examined the effects of changes to both the *certainty* and the *severity* of punishment. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *See* David Weisburd et. al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995). Therefore, this factor weighs in favor of a below-Guideline sentence.

    **D.    The Need to Provide Mr. Beverly with Medical Care Weighs in Favor of a Below-Guideline Sentence.**

Another factor the Court must consider is the need to provide the defendant with medical care. Mr. Beverly was moved directly from the hospital after a near-death experience to the Justice Center. As discussed above, he has not received adequate medical care since being incarcerated. He requires a second surgery on his left hand and physical therapy to avoid amputation of his fingers. The longer he remains incarcerated, the more acute his condition will become. Therefore, this factor weighs in favor of a below-Guideline sentence.

> E. **The Need to Avoid Unwarranted Sentence Disparities Weighs in Favor of a Below-Guideline Sentence.**

The need to avoid unwarranted sentence disparities weighs in favor of a below-Guideline sentence. As set forth in the PSR, the average length of imprisonment for individuals similarly situated to Mr. Beverly (firearms offenders with a Final Offense Level of 25 and a Criminal History Category of VI) is 78 months. (Dkt. No. 56 ¶ 97.) That is less than the Guideline sentencing range in this case, which is 84-105 months. *Id*. ¶ 74. Therefore, this factor weighs in favor of a below-Guideline sentence.

## IV. MR. BEVERLY OBJECTS TO THE IMPOSITION OF A SPECIAL CONDITION OF SUPERVISED RELEASE REQUIRING HIM TO PARTICIPATE IN A MENTAL HEALTH PROGRAM.

The PSR proposes a special condition of supervision requiring Mr. Beverly to "participate in a mental health program" that may include evaluation, outpatient treatment, or inpatient treatment. (Dkt. No. 56 at 27, Special Condition 1.) Mr. Beverly objects to the imposition of this special condition. A district court may impose a special condition of supervised release if the condition (1) is reasonably related to "the nature and circumstances of the offense and the history and characteristics of the defendant," the need to deter criminal conduct, the need to "protect the public from further crimes of the defendant," and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" (2) involves no greater deprivation of liberty than is reasonably necessary for those purposes; and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3583(d). There is no indication that any mental health issue played a role in this offense.

## V. CONCLUSION

For the reasons discussed above, the defense respectfully requests that the Court impose a below-Guideline sentence.

DATED: September 24, 2024                    LISA A. PEEBLES
                                             FEDERAL PUBLIC DEFENDER
                              By:    /s/ Courtenay K. McKeon, Esq.
                                     Assistant Federal Public Defender
                                     Bar Roll No. 515841
                                     Clinton Exchange, 3rd Floor
                                     4 Clinton Street
                                     Syracuse, New York  13202
                                     (315) 701-0080


To:   Matthew J. McCrobie, AUSA (by ECF)
      Nicholas J. Bavaria, USPO (by email)
      Anthony Beverly (by mail)